Anton Ewing
3077 B Clairemont Drive #372
San Diego, CA 92117
(619) 719-9640
anton@antonewing.com

**FILED**

May 29 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ s/Lillianac _____ DEPUTY

Plaintiff In Pro Per

# THE UNITED STATES FEDERAL DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

'18 CV 1063 AJB AGS

Anton Ewing, an individual,

        Plaintiff,

    vs.

8 Figure Dream Lifestyle, LLC, a
Wyoming limited liability company;
Richard Waldman, an individual;
R. Scott International Corp., Florida
corporation;

RFR Capital, LLC, a Delaware limited
liability company;
Robert Signore, an individual;

Fast Advance Funding, LLC, a
Pennsylvania limited liability company;
Anthony Gibson, an individual;

First Premier Funding, LLC, a
Delaware limited liability company;
Anthony J. Gaglio, an individual;

First Union Lending, LLC, a Florida
limited liability company;
Timur Shamsutdinov, an individual;

Civil Case No. 18-CV-

**COMPLAINT**

1. **RICO  18 USC §1964**
2. **TCPA  47 USC §227**
3. **CIPA  PC §632, §637.2, §632.7**

Jury Trial Demanded

COMPLAINT- 1

18cv

FIG Capital, LLC, a Delaware limited
liability company;

Michael Scarpaci, an individual;

Premium Merchant Funding One, LLC,
a New York limited liability company;

Elie Golshan, an individual;

Defendants.

## BACKGROUND

Plaintiff Anton Ewing (herein "Plaintiff" or "Ewing"), proceeding pro se, hereby complains and alleges racketeering, racketeering conspiracy, telemarketing and illegal recording against Defendants 8 Figure Dream Lifestyle, LLC, a Wyoming limited liability company; Richard Waldman, an individual; R. Scott International Corp., a Florida corporation; RFR Capital, LLC, a Delaware limited liability company; Robert Signore, an individual; Fast Advance Funding, LLC, a Pennsylvania limited liability company; Anthony Gibson, an individual; First Premier Funding, LLC, a Delaware limited liability company; Anthony J. Gaglio, an individual; First Union Lending, LLC, a Florida limited liability company; Timur Shamsutdinov, an individual; FIG Capital, LLC, a Delaware limited liability company; Michael Scarpaci, an individual; Premium Merchant Funding One, LLC, a New York limited liability company; and Elie Golshan, an individual, (collectively "Defendants") as follows:

Each and every defendant named herein, including any later named Doe defendants once discovered, have violated the exact same laws, in exactly the same manner, method, fashion, and scheme. The defendants are inextricably related as extreme and notorious TCPA and CIPA violators. Upon information and belief,

18cv

the defendants named in this lawsuit have all used, employed, paid and directed the same third-world country lead generator to originate the first illegal solicitation call to Plaintiff.  Thereafter, each defendant incessantly and repeatedly called Plaintiff over and over again, even after being threatened with this lawsuit.  There are commons questions of law and fact connecting each defendant.  Each defendant used, employed and directed other to use and employ an Automatic Telephone Dialing System to call Plaintiff's phone.

**List of who is being sued under each cause of action -**

The civil Racketeer Influenced and Corrupt Organizations Act (herein "RICO") cause of action (18 USC §1964(c)) filed herein for conspiring to violate 18 USC §1962(c), under 18 USC §1962(d), is expressly alleged against Defendants 8 Figure Dream Lifestyle, LLC, a Wyoming limited liability company; Richard Waldman, an individual; R. Scott International Corp., a Florida corporation; RFR Capital, LLC, a Delaware limited liability company; Robert Signore, an individual; Fast Advance Funding, LLC, a Pennsylvania limited liability company; Anthony Gibson, an individual; First Premier Funding, LLC, a Delaware limited liability company; Anthony J. Gaglio, an individual; First Union Lending, LLC, a Florida limited liability company; Timur Shamsutdinov, an individual; FIG Capital, LLC, a Delaware limited liability company; Michael Scarpaci, an individual; Premium Merchant Funding One, LLC, a New York limited liability company; and Elie Golshan, an individual.

The Telephone Consumer Protection Act (herein "TCPA") causes of action (47 USC §227(b) and (c)) filed herein for, *inter alia*, illegal telemarketing to Plaintiff's National Do-Not-Call Registry (herein "DNC Registry") registered cellular phone through the use of an Automated Telephone Dialing System (herein "ATDS") is expressly alleged against Defendants 8 Figure Dream Lifestyle, LLC,

a Wyoming limited liability company; Richard Waldman, an individual; R. Scott International Corp., a Florida corporation; RFR Capital, LLC, a Delaware limited liability company; Robert Signore, an individual; Fast Advance Funding, LLC, a Pennsylvania limited liability company; Anthony Gibson, an individual; First Premier Funding, LLC, a Delaware limited liability company; Anthony J. Gaglio, an individual; First Union Lending, LLC, a Florida limited liability company; Timur Shamsutdinov, an individual; FIG Capital, LLC, a Delaware limited liability company; Michael Scarpaci, an individual; Premium Merchant Funding One, LLC, a New York limited liability company; and Elie Golshan, an individual.

The California's Invasion of Privacy Act (herein "CIPA") cause of action (PC §632 - landline, §637.2 - cellular, and §632.7 –civil $5K) filed herein for illegal recording of the telemarketing calls made by Defendants to Plaintiff's phone without disclosure of the recording is alleged against Defendants 8 Figure Dream Lifestyle, LLC, a Wyoming limited liability company; Richard Waldman, an individual; R. Scott International Corp., a Florida corporation; RFR Capital, LLC, a Delaware limited liability company; Robert Signore, an individual; Fast Advance Funding, LLC, a Pennsylvania limited liability company; Anthony Gibson, an individual; First Premier Funding, LLC, a Delaware limited liability company; Anthony J. Gaglio, an individual; First Union Lending, LLC, a Florida limited liability company; Timur Shamsutdinov, an individual; FIG Capital, LLC, a Delaware limited liability company; Michael Scarpaci, an individual; Premium Merchant Funding One, LLC, a New York limited liability company; and Elie Golshan, an individual.

///

18cv

# COMPLAINT

1. The Defendants being sued herein are "persons" as defined by 47 USC §153(39) and are listed as follows:

    a. Defendant 8 Figure Dream Lifestyle, LLC, a Wyoming limited liability company;

    b. Richard Waldman, an individual;

    c. R. Scott International Corp., a Florida corporation;

    d. RFR Capital, LLC, a Delaware limited liability company;

    e. Robert Signore, an individual;

    f. Fast Advance Funding, LLC, a Pennsylvania limited liability company;

    g. Anthony Gibson, an individual;

    h. First Premier Funding, LLC, a Delaware limited liability company;

    i. Anthony J. Gaglio, an individual;

    j. First Union Lending, LLC, a Florida limited liability company;

    k. Timur Shamsutdinov, an individual;

    l. FIG Capital, LLC, a Delaware limited liability company

    m. Michael Scarpaci, an individual;

n. Premium Merchant Funding One, LLC, a New York limited

liability company; and

o. Elie Golshan, an individual

2. Defendant 8 Figure Dream Lifestyle, LLC, a Wyoming limited liability company (herein 8 Figure Dream) repeatedly spam texted Plaintiff's cell phone with its get-rich-quick pyramid scam. See attached Exhibit "A" which is incorporated by this reference as if fully set forth herein. 8 Figure Dream was sued in 18-cv-02474 in the Northern District of Illinois for illegal telemarketing. Additionally, 8 Figure Dream was sued in 17-cv-07970 in the Central District of California for illegal telemarketing. Richard Waldman uses 8 Figure Dream as well as R. Scott International to run his telemarketing and spam blasting scam. Waldman used, *inter alia*, 941-787-3169 to spam text Plaintiff on May 19, 2017 at 1:42 PM. Waldman's address is 6255 Aventura Drive, Sarasota, Florida 34241. Waldman admitted on a recorded line that he sends out 35,000 spam text messages per day. On May 19, 2018, Waldman stated that he received 60 responses to his spam texting of 35,000 phone numbers.

3. RFR Capital, LLC, a Delaware limited liability company, is run, operated, managed and controlled by Robert Signore in New York. Signore claims to be a financial guru but in fact he is just another one of thousands of arrogant and

18cv

pompous individuals who blatantly violate the TCPA over ten thousand times each day.  RFR Capital was sued in 17-cv-00560 in the Southern District of Alabama for TCPA violations.   Signore admitted on the phone to illegal recording and to calling using a robo-dialer (ATDS).  See attached Exhibit "B" incorporated by this reference as if fully set forth herein.  RFR Capital repeatedly called from 914-239-0204 on May 18, 2018.  RFR Capital was asked for a copy of its written do not call policy and none has been provided to Plaintiff.

4. Fast Advance Funding, LLC, a Pennsylvania limited liability company, is run, operated, managed and controlled by Anthony Gibson.  Gibson is running a classic racketeering operation and in fact is currently fight a RICO lawsuit in 18-v-00758 in the Eastern District of Pennsylvania as well as another RICO lawsuit in 17-cv-4622 in the same district.  Fast Advance Funding is also being sued in 17-cv-05753 in the Central District of California for TCPA violations.  See attached Exhibit "C" which is hereby incorporated by this reference as if fully set forth herein.  Fast Advance Funding has conspired with a Norman Valz to extort Plaintiff by threatening criminal action in order to get Plaintiff to give up his right to bring this lawsuit for illegal telemarketing.  Fast Advance Funding is engaging in usurious loan shark lending at 145% annual interest.  Fast Advance Funding called multiple times

18cv

on April 26, 2018 from 707-289-8009.  Chris Larrea from Fast Advance

Funding was one of the telemarketers.  Fast Advance Funding uses

www.fastadvancefunding.com to further its rip off scam.  Chris stated that

Fast Advance Funding was a "direct lender."  Bob Clark stated he was Chris

Larrea's manager and he stated that they record all their calls and that he was

familiar with PC §632.  267-831-3717 was the number that Bob Clark called

from.  Fast Advance Funding has failed to provide a copy of its do not call

policy.

5. First Premier Funding, LLC, a Delaware limited liability company is run,

operated, managed and controlled by Anthony J. Gaglio.  Gaglio already spent

38 months in federal prison for running a telemarketing scam.  See 02-cr-

00372 from the Southern District of New York.  Gaglio's Bureau of Prison ID

number is 51164-054 and he was released on February 6, 2008 for an

additional five years of supervised release (aka federal parole).  Gaglio

threatened to have Plaintiff "wacked" if this lawsuit was filed.  That threat was

recorded for the court and the jury to listen to at trial.  Gaglio also referred to

Plaintiff as a "fat fuck[1]."  Gaglio indicated he has "more money than God" and

that Plaintiff was a "faggot."  Gaglio's phone number is 631-721-5319.  First

Premier Funding called from 516-473-0076 and 747-222-8858.  See attached

---

[1] Plaintiff is 5'9" at 159 lbs.

COMPLAINT- 8

18cv

Exhibit "D" which is hereby incorporated by this reference as if fully set forth herein. First Premier Funding called from 831-994-6188 on May 29, 2018 at 9:20 AM to try to sell a loan to Plaintiff. First Premier Funding called again from 831-994-6188 on May 29, 2018 at 9:26 AM. First Premier Funding called again from 831-994-6188 on May 29, 2018 at 9:28 AM.

6.  First Union Lending, LLC, a Florida limited liability company is run, operated, managed and controlled by Timur Shamsutdinov. Tanya from First Union Lending called multiple times from 352-405-5019 on April 30, 2018. Hans Becke, who is Tanya's boss and the "Director of Underwriting," called from 352-405-5020. See attached Exhibit "E" which is hereby incorporated by this reference as if fully set forth herein. First Union Lending indicated, through Hans Becke, that they recorded the telemarketing call and no disclosure was provided that the call was being recorded. Mr. Becke used hans.becke@firstunionlending.com. Dennis from First Union Lending admitted that First Union Lending called and that they record calls. First Union Lending confirmed that they hired a company outside the United States to make telemarketing calls to persons within the United States and record answers to various financial questions that First Union Lending required them to ask. First Union Lending has thus directed and controlled the outside telemarketing lead broker in such a manner as to

18cv

deem them the agent of First Union Lending and attach vicarious liability for their actions. This is in addition to the illegal calls that First Union Lending initiated after the off-shore entity used an ATDS to illegally call Plaintiff. First Union Lending has failed to provide Plaintiff with a copy of their do not call policy. First Union Lending has failed to properly train its personnel on the TSR and the TCPA.

7. FIG Capital, LLC, a Delaware limited liability company, is run, operated, managed and controlled by Michael Scarpaci. FIG Capital called from 212-776-4385. FIG Capital also called from 516-439-4178. FIG Capital called on November 2, 2015 and multiple times on November 8, 2015. FIG Capital called Plaintiff on May 23, 2018. See attached Exhibit "F" which is hereby incorporated by this reference as if fully set forth herein. FIG Capital has not provided a copy of the DNC policy in writing to Plaintiff.

8. Premium Merchant Funding One, LLC, a New York limited liability company, is run, operated, managed and controlled by Elie Golshan. Premium Merchant Funding has been sued in 18-cv-00377 in the Southern District of Ohio for TCPA violations. Premium Merchant Funding has called Plaintiff from 315-257-1195, 646-766-0835 and 646-766-1774. Premium Merchant Funding called Plaintiff on September 21, 2017. Premium Merchant Funding called Plaintiff through Abe Burger on November 10, 2017. See attached

Exhibit "G" which is hereby incorporated by this reference as if fully set forth herein.

9. None of the defendants named herein are exempt under any theory of "one free B2B call" because each defendant is liable for the initial originating call made by their hired and controlled agents wherein an ATDS was sued. Thus any subsequent calls constitute more than one call within a 12 month period. Furthermore, there is not "one free B2B call" when an ATDS is used. Each defendant named herein used an ATDS to make and initial the calls even if they used said ATDS in "manual" mode.

10. To state a claim under § 1962(c), Plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Walter v. Drayson,* 538 F.3d 1244, 1247 (9th Cir. 2008) (quoting *Odom v. Microsoft Corp.,* 486 F.3d 541, 547 (9th Cir. 2007). Plaintiff hereby alleges that each and every defendant named herein engage in the conduct of an enterprise through a pattern of racketeering activity. The conduct is the violation of predicate acts in violation of 18 USC §1961. Specifically, each and every defendant violated the wire fraud statute, 18 USC §1343, multiple times. That is, each and every defendant committed and engaged in the use of the US wires to run a common plan or scheme to commit crimes, including illegal telemarketing (47 USC §501 by violation §227), violating the right to honest services, by making

express extortionate threats to Plaintiff that violate California Penal Code

sections 518 – 523, a felony.  These state law felonies are a predicate act under

18 USC §1961(1)(A).  Moreover, each defendant named herein violated usury

laws and engage in loan shark lending by selling and attempting to sell loans

at interest rates above 25% to Plaintiff.  Each of the named defendants also

failed to register for a California Finance Lender license at the time of the

illegal telemarketing calls.  Each defendant herein also failed to register with

the California Department of Justice as a telemarketer, nor did they post the

required bond therefor.  The enterprise that each defendant used, ran and

employed to commit interstate racketeering, extortion and harassment is the

LLC or corporation respectively named as a defendant.  The enterprises that

each defendant used are: 8 Figure Dream Lifestyle, LLC, a Wyoming limited

liability company; R. Scott International Corp., a Florida corporation; RFR

Capital, LLC, a Delaware limited liability company; Fast Advance Funding,

LLC, a Pennsylvania limited liability company; First Premier Funding, LLC, a

Delaware limited liability company; First Union Lending, LLC, a Florida

limited liability company; FIG Capital, LLC, a Delaware limited liability

company and Premium Merchant Funding One, LLC, a New York limited

liability company.  Each is these said entities were the respective racketeering

enterprises that were used in this matter.  The pattern of racketeering activity

consists of the repeated telephone calls made by each defendant over months and months, and in many instances – several years, along with the email threats to extort Plaintiff by accusing Plaintiff of a crime or threatening to accuse Plaintiff of a crime is Plaintiff did not give up his right to file this lawsuit and seek damages for illegal telemarketing by defendants to Plaintiff. The racketeering activity is those predicate acts described in detail herein which violated 18 USC §1961(1)(A) and (B).

11. "As the Court unanimously held in *Haines v. Kerner*, 404 U.S. 519 (1972), a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id., at 520-521, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)." *Estelle v. Gamble* (1976) 429 U.S. 97, 106 [97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261].

12. The 9th Circuit has overruled *Romero vs. Dep't Stores Nat'l Bank, 2018 US App. LEXIS 5266* in *Van Patten vs. Vertical Fitness Group, LLC, 847 F.3d 1037 (8th Cir. 2017)*. The same logic the *Romero* court used was also used in *Ewing vs SQM US, Inc., 211 F.Supp.3 1289 (2016)*.

13. Plaintiff is a resident of San Diego, California and is suing each and every defendant listed for committing the criminal act of violating 47 U.S.C. §501

by violating what has been expressly made unlawful under 47 USC §227.

Section 227 of Title 47 provides a private right of action to sue for illegal

robo-dialed telemarketing calls to Plaintiff's DNC Registry registered private

cellular phone number 619-719-9640 for which Plaintiff is charged for

minutes and text messages by AT&T and charged for the electrical power to

recharge by SDG&E after receiving the illegal telemarketing calls and texts

messages from the Defendants.

14. Plaintiff heard a distinctive click and pause at the beginning of each robo-dialed

telemarketing call made by Defendants using an ATDS.  To be clear,

Defendants each used an ATDS to call Plaintiff.  There was more than a two-

second delay before a live human operator came on to the call.  Plaintiff has a

full and complete recording of one of the harassing and annoying calls that

violated Cal. Pen. Code §653m and will provide a true and accurate copy of the

same to the Court.  The recording proves the click sound and the delay.  "The

plausibility standard 'calls for enough fact to raise a reasonable expectation that

discovery will reveal evidence' of the defendant's liability." *Miyahira v.*

*Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*,

550 U.S. at 556).  The Federal Communications Commission ("FCC")—which

has authority to implement the TCPA's provisions, *see* 47 U.S.C. § 227(b)(2)—

has stated that a plaintiff, to establish a TCPA violation, "need only show that

[the Defendant] called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012) (quoting *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 564 (F.C.C. 2008)).  Because the Defendants have violated multiple subsections of 47 U.S.C. §227, including but not limited to 47 U.S.C. §227(b)(1)(A) and §227(c), then Defendants, and each of them, have committed the criminal violation of 47 U.S.C. §501.  Defendants have knowingly and intentionally devised a scheme, plan, and artifice to use the wires of the United States to criminally call Plaintiff, and others, DNC Registry registered landline telephones and cellular phones, to illegally sell and collect on fraudulent and usurious loans, all without a license (California Real Estate Broker License, California Dept. of Real Estate License (herein "DRE") or California Finance License (herein "CFL")).  The multiple acts of wire fraud, in violation of 18 USC §1343, provide the basis and foundation of predicate acts that make Defendants, and each of them liable for conspiracy to violate 18 U.S.C. §1962(b) and (c).  Each defendant and the Court is hereby put on express written notice that this is not just a TCPA case but also a complex racketeering case and these named defendants are some of the worst violators in the entire country.  Their flagrant and willful disregard of the laws of this country is

staggering and it is likely that both the Court and members of the jury will have each received a telemarketing call from at least one of the Defendants.

15. Importantly, "prior express consent is an affirmative defense, not an element of the claim," meaning a plaintiff "need not plead that he did not give his prior express consent." *Manfred v. Bennett Law, PLLC*, No. 12–CV–61548, 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012). Rather, "[t]he only thing [a] [p]laintiff must plead to establish a violation of the TCPA is that the [d]efendants left voicemail messages at a number assigned to a cellular telephone service using an automatic dialing system or an artificial or pre-recorded voice." *Id.* (denying motion to dismiss for failure to state a claim where the plaintiff alleged "that [the] [d]efendants used an Automatic Telephone Dialing System or an artificial or pre-recorded voice to place the telephone calls to [the] [p]laintiff's cellular phone.").

16. Plaintiff alleges that Defendants placed repeated automated telephone calls to Plaintiff's cell phone number 619-719-9640 from Defendant's phone and that the calls exhibited signs of being made with an ATDS, including repeated telemarketing calls to Plaintiff within a period of time (June 13, 2014 to May 28, 2018) and the presence of a pause or click (proven by the recording), which is commonly associated with an ATDS. Those allegations are true and are sufficient to establish the elements of a TCPA claim.  Defendant's

18cv

telemarketing agent, which Defendants has total control over, also admitted on the call that they used an ATDS to initiate the dialing of the call to Plaintiff's personal private cell phone which is registered on the DNC Registry. The Court is requested to take judicial notice of www.donotcall.gov

17. Plaintiff requested a copy of Defendant's Do-Not-Call policy and Defendants failed to provide a copy. This is a violation of 47 USC §227(c). To this day, Defendants have still not provided a copy of their required written do not call policy.

18. Defendants are also not licensed to sell loans to California consumers (including Plaintiff) that exceed 10% per annum interest rates. Defendants did, and do still, sell loans into California, to California residents, that far exceed the 10% legal limit and thus Defendants are engaged in felony loan shark usury lending, which is a violation of 18 USC §1961 predicate act as well as a direct and explicit violation of §1962. Defendants use the wires of the United States to engage in this fraudulent lending, all of which constitutes a common plan or scheme to engage in criminal activity. Defendants have made express and overt threats to Plaintiff that can only be described as totally uncalled for in a rule-of-law society whereby Plaintiff asserts his legal rights not to be harassed, seriously annoyed and telephonically stalked. Defendants engaged in extortionate threats, claiming to expose Plaintiff to disgrace and public oblique

if Plaintiff did not give up his right to be left alone (ie. right to sue for injunctive relief under 47 USC §227(b)(3)).

19. Defendants, and each of them, have engaged in and committed the act of a conspiracy to violate RICO under 18 USC §1964(c), by violating 18 USC §1962(d), by violating 18 USC §1962(c) through a conspiracy to run a racketeering enterprise and committed two or more predicate acts of wire fraud in violation of 18 USC §1343, which is an enumerated act of racketeering activity under 18 USC §1961. This is a specific allegation with evidence and not an anecdotal generalization. It is anticipated that counsel for Defendants will cry foul and claim that this is too general and generic. To be clear, each Defendant has, within the time stated above, made thousands of illegal telemarketing calls as part of a scheme to defraud Plaintiff and others of money or property. Plaintiff has expressly articulated when and what number was called. Defendants' metadata will show from each of their own databases that they called Plaintiff. They each know what day and time as well as from what number and to what number. Additionally, Defendants are collecting an unlawful debt in violation of 18 USC §1962(a) and have conspired to do so in violation of 18 USC §1962(d). This RICO cause of action is alleged and asserted against all Defendants.

20. Each time Defendants called Plaintiff it was a completed crime under 47 USC §501. Each Defendant herein is expressly and clearly being accused of criminal activity. That criminal activity has a statutory private right of action that is being enforced by this Plaintiff. The American public demands that these laws be enforced so they can trust the legitimacy of telecommunications coming from the ever evolving and steep learning curve from digital devices. Therefore, Defendants should never be allowed to get away with illegally and

criminally calling millions of Americans because this hurts the future of the American economy and dampers good faith in our American telecommunication systems.  The American public has lobbied for and demonstrated zero tolerance for these illegal calls. These illegal calls are not only harassing in nature but also dangerous and distracting when a seemingly important, but illegal call, gets connected during inopportune activities such as operating machinery or motor vehicles.  This Complaint is going to attempt to stop each Defendant by demanding that the Court issue an injunction pursuant to 47 USC §227(b)(3) to stop violating the TCPA and stop harassing innocent Americans, including the Plaintiff, who has served his country and is an honorably discharged military veteran.  The message will be loud and clear: stop outsourcing and exporting American jobs and hiring third world country workers to conduct illegal activity and circumvent our legal system by calling our private telephones and cell phones to harass, annoy, endanger us, and lose our good faith and credit in the American telecommunications system.

21. The statute that was violated was 47 USC §227(b) and it expressly states "it. shall be unlawful…" and by doing the unlawful act of calling Plaintiff to solicit the Defendant's illegal criminal telemarketing conspiracies, the Defendants have committed a willful crime over and over again.

22. 47 USC §501 expressly states that it is a crime to violate what has been "made unlawful" within Chapter 6 and §227 is within Chapter 6.

23. Plaintiff further brings a cause of action alleging that Defendants have violated the TCPA, 47 USC §227(b)(1)(A) and 16 CFR Part 310, by illegally calling Plaintiff's cell phone number 619-719-9640 to solicit and sell Defendant's usurious loans and usury is a felony under California law.  Defendant's employees each stated that their loans are at 20% or higher which is clearly a

felony under California law.

24. Plaintiff further brings a cause of action and alleges that Defendants have violated Cal. Pen. Code §632, §637.2 and §632.7 by illegally recording the telemarketing calls Defendants made to Plaintiff without informing Plaintiff that said calls were being recorded by Defendants at the beginning of the call.

25. Defendants are selling and have sold illegal loans at the usurious interest rate of 52% (fifty-two percent) per annum charged on the principle amount of the outstanding loan. See 18 USC §892(b)(2) which provides that Defendant's extension of credit at above 45% constitutes an extortionate extension of credit. 18 USC §892 is listed as a predicate act under 18 USC §1961's definition of racketeering activity.

26. Defendants, along with the employees and contracted agents of Defendants, owed a duty of care, a duty of honesty, and a duty of loyalty as well as a fiduciary duty (found in every client-customer relationship wherein confidential and private information is exchanged), to Plaintiff when Defendants called Plaintiff to sell its loan. Those above stated duties, and each of them, were breached by Defendants when their employees and agents illegally, and criminally, called Plaintiff by violating 47 USC §501[2] and §227(b)(1)(A) and (c)(5), as well as the Telemarketing Sales Rule (16 CFR Part 310).

---

[2] Any person who willfully and knowingly does or causes or suffers to be done any act, matter, or thing, in this chapter prohibited or declared to be unlawful, or who willfully and knowingly omits or fails to do any act, matter, or thing in this chapter required to be done, or willfully and knowingly causes or suffers such omission or failure, shall, upon conviction thereof, be punished for such offense, for which no penalty (other than a forfeiture) is provided in this chapter, by a fine of not more than $10,000 or by imprisonment for a term not exceeding one year, or both.

Additionally, Defendants breached said duties when they, and their agents and employees, illegally, and with criminal *mens rea*, secretly recorded the solicitation calls they made to Plaintiff in violation of Cal. Pen. Code §632, §637.2 and §632.7 as well as violation of Civil Code §1770(a)(22).

27. None of the Defendants have filed and registered as telemarketers with the California Department of Justice pursuant to Business & Professions Code §17511.1. That is a felony pursuant to B&P §17511.9. Defendants were required to post a $100,000 bond so that Plaintiff could use said bond to satisfy the judgment in this lawsuit.

28. Moreover, the Defendants violated California law by knowingly, willfully, and intentionally failing to register to do business in California with the California Secretary of State, as well as failing to obtain a California Finance Lender license and failing to pay California taxes to the State Board of Equalization and Franchise Tax Board, which constitutes tax evasion and tax fraud, on profits they have earned in California from California customers.

29. Defendants have each knowingly and willfully failed to register as telemarketers with the California Department of Justice, failed to pay the $50 fee and failed to post the $100,000 bond that is required. Defendants are in violation of and did in fact violate B&P §17511.1 et seq.

30. Defendants violated Plaintiff's intangible right to honest services as defined in

18 USC §1346 which defines the term scheme or artifact to defraud regarding

wire fraud (18 USC §1343).  See *United States v. Rybicki*, 354 F.3d 124 (2d

Cir. 2003)  Defendants repeatedly called Plaintiff, which constitutes the use of

the wires to engage in their scheme and thus wire fraud under 18 USC §1343, to

illegally sell its 52% annual interest rates loans, which is usurious felony loan

shark lending in violation of California and Federal law.  Defendant's

employees and agents were dishonest with Plaintiff and were committing

multiple criminal acts as a result of the calls and during the calls.  Defendants

breached Plaintiff's right to privacy and Plaintiff's intangible right to honest

services when they called Plaintiff.  Plaintiff's privacy rights are protected

under Cal. Pen. Code §632.  Plaintiff had the vested right to have Defendant's

employees and agents communicate honestly and truthfully, which they did not

do.  Plaintiff provided Defendants with extensive private information during

each call as Defendant's agent was filling out the loan application

contemporaneously.  Defendant's agent had a duty to be honest with Plaintiff

and had a duty not to engage in criminal conduct at any time during said calls.

The act of committing the crime of calling (47 USC §501), along with the act of

selling a usurious loan (18 USC §892), as well as the act of illegal recording

(PC §632) was a breach of Plaintiff's intangible right to honest services and

right to privacy.  The breach and violation of the intangible right to honest services and right to privacy constitutes wire fraud under 18 USC §1343.

31. It is a well-established rule of construction that "'where Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.'" *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322, 117 L. Ed. 2d 581, 112 S. Ct. 1344 (1992)(quoting Community for Creative Non-Violence v. Reid, 490 U.S. 730, 739, 104 L. Ed. 2d 811, 109 S. Ct. 2166 (1989)); see Standard Oil Co. of N.J. v. United States, 221 U.S. 1, 59, 55 L. Ed. 619, 31 S. Ct. 502 (1911) ("Where words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense").

32. *Blitz*, below, holds that it is possible to commit the predicate act of wire fraud by engaging in an illegal telemarketing scheme to sell felonious loans: "The record of this case contains ample evidence from which a rational jury could find Hall guilty of wire fraud, which is established through the existence of a scheme to defraud and the use of interstate wires in furtherance of that scheme. *See United States v. Hubbard*, 96 F.3d 1223, 1227-28 (9th Cir. 1996); *United States v. Lothian*, 976 F.2d 1257, 1262 (9th Cir. 1992). The

18cv

government presented overwhelming evidence that the *Nortay* telemarketers engaged in a scheme to defraud victims of other fraudulent telemarketing schemes, in many of which *Nortay* telemarketers had themselves been involved." *United States v. Blitz*, 151 F.3d 1002, 1006 (9th Cir. 1998).  See also *United States v. Brown*, 147 F.3d 477 (6th Cir. 1998) (holding that telemarketing in violation of TCPA constitutes wire fraud when the scheme is to defraud consumers).

33. Defendants committed the crime of extortion by threatening Plaintiff with criminal action by threatening to contact the San Diego County District Attorney and/or the San Diego Police in violation of Cal. Pen. Code §519 and §523.  There was no other reason, other than to engage in extortion, to contact the San Diego County District Attorney and/or the San Diego Police.  Defendant's conduct is criminal and Defendant's have the gall and audacity to accuse Plaintiff of wrong-doing when it is Defendants who are the criminal telemarketers using dozens of cubicles filled with telemarketers using robo-dialers.  But for Defendant's failure to scrub their telemarketing lists, they would never have called Plaintiff.

34.  Section 310.3(b) of the TSR prohibits providing substantial assistance or support to telemarketers when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that

violates the TSR.  *United States v. Dish Network LLC*, No. 09-3073, 2017 U.S.
Dist. LEXIS 85543, at *299 (C.D. Ill. June 5, 2017)

35. Many of the listed Defendants have also been sued in separate class action
lawsuits for TCPA violations.  This shows willfulness and knowing intent to
violate the TCPA.

36. Plaintiff hereby expressly pleads, alleges, complains and accuses that
Defendants are and were knowingly and intentionally engaged in a conspiracy
to commit racketeering through the conduct of an enterprise, the entity named
herein as the enterprise, in violation of 18 USC §1961, §1962 and §1964.
Specifically, between June 13, 2014 and continuing to present, Defendants
actually laundered well over $10,000 of illegal revenues, gains and earnings
obtained from the criminal violation of 47 USC §501 by violating §227(b)(1)(a)
and (c)(5).  Defendants have committed wire fraud, a predicate act under 18
USC §1343, which is expressly listed under 18 USC §1961.  Defendants have
engaged in a common plan and scheme to defraud Plaintiff and thousands of
other California citizens and residents with usurious loans.  Defendants have
and are running a boiler-room operation with dozens of third world
telemarketers that they have trained and conspired with to make illegal
telemarketing calls to Americans whose cellular and home phones are
registered on the FTC's DNC Registry.  The running and operating the

telemarketing boiler-room to harm, injure, harass, endanger, scam, and hurt Americans, including this honorably discharged military veteran Plaintiff, is a criminal predicate act in violation of 18 USC §1964 and §1962.

37. Defendants each gave orders, directions, advice, counsel and information to the other Defendants on exactly how, when and where to conduct illegal telemarketing calls to California citizens, including Plaintiff specifically.

38. Defendants actually have several boiler-room type telemarketing operations, including one in India and another in the Philippines. Defendants believe that running their wire fraud operation using the wires or telephone systems of the United States by originating their illegal telemarketing calls from outside the USA will allow them to evade America's racketeering laws. This Court is requested and herby moved to not allow Defendants to export American dollars and American jobs overseas like these Defendants have done. Defendants, and each of them, have directly and through each other, violated 18 USC §1343 (wire fraud) by calling Plaintiff and other California residents from India and the Philippines to illegally sell their usurious loans into California without a CFL, DRE, or a California Real Estate Broker License. Additionally, Defendants, and each of them, are not registered to do business in California with the California Secretary of State. Defendants are legally required to register to do business in California and to obtain licensing to sell loans at over

18cv

10% interest. Defendants, and each of them, have purposefully availed themselves of the benefits and protections of California law by selling into California, via telephone wires, to California-registered telephone numbers (cellular and landlines) to California residents and domiciled persons, including Plaintiff.

39. The number of complaints filed against Defendants on Yelp, Ripoff Report, BBB, FTC and complaintsboard.com is staggering.  Plaintiff is not the only person that Defendants have attempted to scam, hurt and harm with their criminal violations of the DNC Registry, their extortionate threats to expose those who stand up to them (including Plaintiff) and their usurious loan-shark lending scams were, in fact, perpetrated by Defendants and each of them through their racketeering conspiracy to commit wire fraud, money laundering and extortion.

40. Defendants extorted Plaintiff by threatening to call the police and file false criminal charges against Plaintiff.  This overt example of extortion is just one of the many overt predicate acts that Defendants have committed while running their racketeering enterprise.

41. Defendants harmed, injured and caused tortious interference with Plaintiff's business by repeatedly calling or causing others hired by them to call Plaintiff over and over again to telemarket their scam usurious loans.  Plaintiff's

business was seriously interrupted by the plethora of calls instituted and made

by Defendants.  Plaintiff could not meet with his own separate clients during

the times the Defendants called Plaintiff's phone.  Additionally, Plaintiff could

not trust his cell phone caller ID and missed several important client calls

during the period in question (June 13, 2014 to May 28, 2018) causing

unwarranted financial stress and reducing the overall earning potential that

Plaintiff could have reaped. Furthermore, Plaintiff could not engage in gainful

business activity while Plaintiff had to wait for his phone to recharge as a result

of the battery depletion cause by Defendants.  Moreover, Plaintiff suffered and

incurred the loss of the use of his phone during each call and during the

recharging thereof.  In addition, Plaintiff was harmed and injured by the fact

that Defendants, and each of them, directly and proximately caused Plaintiff to

have to pay for the electric utilities to recharge his phone and to have to pay his

AT&T cellular phone company for the additional minutes used up by

Defendant's illegal scam telemarketing calls made to sell illegal loans into

California without any license whatsoever.  Selling loans into California

without a license (CFL or DRE) at more than 10% per annum interest is a

felony under California law.  Defendant did, in fact, sell and continues to sell

illegal loans into California, including express and intentional selling to

Plaintiff.  Defendant's conducted as described herein above actually caused

Plaintiff to sustain and suffer actual harm and loss of business and property. The US Supreme Court has ruled that Defendants are vicariously liable under the TCPA for the acts of their agents. But for Defendants' conduct, Plaintiff would have been able to earn the income, revenue and gains that were denied to Plaintiff as a direct, legal and proximate cause of Defendants' illegal, criminal and conspiring conduct, including Defendant's conspiracy to commit racketeering through the conduct of an enterprise. Plaintiff additionally alleges that the significant time and effort spent to bring these Defendants to justice before this Court through research and investigation is also an injury caused by Defendants and each of them.

42. Plaintiff was forced to pay San Diego Gas & Electric Company more money for Plaintiff's electric utility bill than he would have had to pay but for Defendants, and each of them, violating Plaintiff's privacy and other rights from the illegal calls made by Defendants and their employees and agents, to Plaintiff. Plaintiff's bitcoin mining application was shut off when each Defendant called Plaintiff's smart phone. Thus Plaintiff lost actually earnings and revenues as a direct result of each Defendant's illegal call.

43. Defendants in 2016 knowingly and intentionally met, convened, gathered and conspired to employ a telemarketing company located in the Philippines, India, and elsewhere, to make ATDS-dialed prerecorded message calls to Plaintiff and

18cv

thousands of other California citizens and residents.  Defendants, and each of them, conspired to employ this telemarketing boiler-room of criminal conspirators to use advanced technology to randomly sequentially dial every combination of telephone number in all of California's area codes, including Plaintiff's home and cellular phones within area code 619.  The persons, the Defendants, and each of them, employed, trained and conspired within to make and in fact did make live transfers of the illegal calls from the international boiler-room operations using the telephone system, whether direct dial or through Skype or Google Voice, to violate the DNC Registry to sell usurious loans without a CFL license is wire fraud.  Defendants knowingly and intentionally, with a greedy hand guided by an evil mind, exactly and expressly did this every day from June 13, 201 to May 28, 2018.

44.  As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act...is well known for its provisions limiting junk-fax transmissions.  A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered--and routing a call to voicemail counts as answering the call.  An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 638 (7ᵗʰ Cir. 2012).*

45. Under Federal Rule of Civil Procedure 8(a)(2), the Plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A Complaint may survive a Motion to Dismiss if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In sum, for a complaint to survive a Motion to Dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the Plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the Plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). The Court must evaluate lack of statutory standing under the Rule 12(b)(6) standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). However, because Plaintiff is proceeding pro se, his complaint "must be held to less

stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming standard reviewing pro se complaints post-*Twombly*). The Ninth Circuit has concluded that the court's treatment of pro se filings after *Twombly* and *Iqbal* remain the same and pro se pleadings must continue to be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42 (7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting that even following *Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint liberally"). *Romero* has been overruled by the 9th Circuit Court of Appeals.

## STANDING

41.     Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    i.   A valid injury in fact;

    ii.   which is traceable to the conduct of Defendants;

and is likely to be redressed by a favorable judicial decision. See, *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560.  In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiffs must clearly allege facts demonstrating all three prongs above.

18cv

A. The "Injury in Fact" Prong.

Plaintiff's injury, in fact, must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo* (Id.). For an injury to be "concrete," it must be a de facto injury, meaning that it actually exists. In the present case, Plaintiff was called on his cellular phone at least five (5) times by Defendants.  In fact, Plaintiff expressly informed Defendants to cease and desist from all future telemarketing on the very first call.  Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff in multiple ways. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). Defendant's invasion of Plaintiff's right to privacy is further exacerbated by the fact that Plaintiff's phone number, at all times relevant to this litigation, was on the DNC Registry.  As well, Plaintiff had no prior business relationship with Defendants prior to receiving the seriously harassing and annoying calls as well as the extortionate threats by Defendants.  All of Plaintiff's injuries are concrete and de facto.  For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins, 578 U.S. ___ (2016)* at 14.  In the instant case, it was Plaintiff's phone that was called and it was Plaintiff himself who answered the calls.  It was Plaintiff's personal privacy and peace that was invaded by Defendant's persistent phone calls using an ATDS and a pre-recoded robot voice message, despite Plaintiff having no prior business

relationship with Defendants and Plaintiff's attempt to avoid the damage by registering his number on the DNC Registry.  Finally, Plaintiff alone is responsible to pay the bill on his cellular phone, his home phone and to pay the bill for his electric utility company kilowatt-hour power usage, and lost potential earnings and wages.  All of these injuries are particularized and specific to Plaintiff and will be the same injuries suffered by Plaintiff.

B. The "Traceable to the Conduct of Defendants" Prong

The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that his injury is traceable to the conduct of Defendants. In the instant case, this prong is met by the fact that the calls to Plaintiff's cellular phone and home phone (landline) were placed either by Defendants directly, or by Defendants' agent at the direction of Defendants.

C. The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong.

The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiff's Prayers for Relief include a request for damages for each call made by Defendants, as authorized by statute in 47 U.S.C. § 227.  The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.  Furthermore, Plaintiff's Prayers for Relief

1   request injunctive relief to restrain Defendants from the alleged abusive practices

2   in the future. The award of monetary damages and the order for injunctive relief

3   redress the injuries of the past and prevent further injury in the future.  Because all

4   standing requirements of Article III of the U.S. Constitution have been met, as laid

5   out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiff has standing to sue

6

7   Defendants on the stated claims.

8
9   "…[C]ourts in the Ninth Circuit have held that "allegations of
    nuisance and invasions of privacy in TCPA actions are
10   concrete" injuries that establish standing. See *Mbazomo v.
    ETourandtravel, Inc.*, 16-CV-2229-SB, 2016 U.S. Dist.
11   LEXIS 170186, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8,
12   2016); *Cabiness v. Educ. Fin. Sols., LLC*, 16-CV-1109-JST,
    2016 U.S. Dist. LEXIS 142005, 2016 WL 5791411, at *5
13   (N.D. Cal. Sept. 1, 2016); *Juarez v. Citibank, N.A.*, No. 16-
14   CV-1984-WHO, 2016 U.S. Dist. LEXIS 118483, 2016 WL
    4547914, at *3 (N.D. Cal. Sept. 1, 2016); *Hewlett v.
15   Consolidated World Travel, Inc.*, 16-713 WBS AC, 2016 U.S.
16   Dist. LEXIS 112553, 2016 WL 4466536, at *2 (E.D. Cal.
17   Aug. 23, 2016); *Cour v. Life360, Inc.*, 16-CV-00805-TEH,
    2016 U.S. Dist. LEXIS 98945, 2016 WL 4039279, at *2 (N.D.
18   Cal. July 28, 2016); *Booth v. Appstack, Inc.*, No. 13-1553JLR,
19   2016 U.S. Dist. LEXIS 68886, 2016 WL 3030256, at *7
20   (W.D. Wash. May 25, 2016). In *Mbazamo*, the court held that
    a violation of the TCPA represents a concrete injury because
21   "[t]he history of sustaining claims against both unwelcome
22   intrusion into a plaintiff's seclusion and unceasing debt-
23   collector harassment are squarely 'harm[s] that [have]
    traditionally been regarded as providing a basis for a lawsuit.'"
24   Mbazamo, 2016 U.S. Dist. LEXIS 170186, 2016 WL
25   7165693, at *2 (quoting *Spokeo*, 136 S.Ct. at 1549-50). The

court declined to follow *Romero*, explaining that *Romero* "improperly erodes the pleading standard set under Fed. R. Civ. P. 8(a) . . . . A plaintiff [need only] plausibly tie the alleged acts of the defendant to the alleged harms suffered." Id.

Similarly, in *Cabiness*, the court held that a violation of the TCPA represents a concrete injury because "[e]every unconsented call through the use of an ATDS to a consumer's cellular phone results in actual harm: the recipient wastes her time and incurs charges for the call if she answers the phone, and her cell phone's battery is depleted even if she does not answer the phone . . . . unsolicited calls also cause intangible harm by annoying the consumer." *Cabiness*, 2016 U.S. Dist. LEXIS 142005, 2016 WL 5791411, at *5 (internal citations omitted). And in *Juarez*, the court held that the plaintiff's allegation "that he received repeated unwanted calls that caused him aggravation, nuisance, and an invasion of privacy, is sufficient to allege a 'concrete' and 'particularized' injury that establishes standing under *Spokeo*." *Juarez*, 2016 U.S. Dist. LEXIS 118483, 2016 WL 4547914, at *3.

*Messerlian v. Rentokil N. Am., Inc.* (C.D.Cal. Dec. 15, 2016, No. CV 16-6941-GW (GJSx)) 2016 U.S.Dist.LEXIS 175224, at *7-8.

42. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*. at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court noted that concreteness is quite distinct from particularization. *Id*. An injury is "particularized" if it affects "the plaintiff in a personal and individual way." Id. In addition, for an injury to be

"concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id.* However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id*. at 1549. In order to determine whether an intangible harm constitutes injury in fact, *Spokeo* provided two factors to be considered: "history and the judgment of Congress." *Id*. at 1549. Specifically, "(1) whether the statutory violation bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural." *Matera v. Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016). *Spokeo* also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549. In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." *Id.*

43. Plaintiff was illegally called for telemarketing purposes by Defendant's staff, employees or agents thereof. Plaintiff's knowledge of the Defendant's racketeering violations is personal and first hand, and it is documented.

44. Plaintiff has never had any prior business relationship with any of the Defendants. Plaintiff's cellular telephone number 619-719-9640 is a private

personal cell phone number.  Plaintiff has never granted Defendants permission to contact Plaintiff.

**JURISDICTION TO HEAR THIS COMPLAINT IN FEDERAL COURT**

45. Plaintiff brings this action for multiple violations of California's Privacy Act and California Penal §630, et seq. by Defendants as hereinafter described. Defendants have violated 48 U.S. C. §227 and 18 USC §1962 and therefore this Court has jurisdiction pursuant to the federal questions raised herein. *Mims v. Arrow Fin. Servs.,* LLC, 132 S. Ct. 740 (2012).

46. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of San Diego, State of California which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

**Standard Applicable to a Preliminary Injunction**

47. To demonstrate his entitlement to a preliminary injunction, Plaintiff must show (a) that he will suffer irreparable harm and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in Plaintiffs' favor.

18cv

48. This Court has personal and subject matter jurisdiction and venue over federal law claims and may hear pendent state law violations.

49. The Court is requested to enter an order for preliminary injunction to prohibit Defendants from calling or spamming Plaintiff and to prohibit Defendants from selling his personal confidential information to third parties.

50. Plaintiff is a U.S. citizen and a resident of the City of San Diego, County of San Diego, State of California.

51. During the period relevant herein, which is April 13, 2016 and continuing presently, Defendants were and continues to be the agent of Defendants for purposes of setting aside the corporation's veil of liability protection.  Because Defendants have disregarded and disrespected the corporation and all of its required formalities of operation as well as the fact that Defendants have used and employed agents and employees to commit multiple criminal acts, including but not limited to 47 USC §501, Cal. Pen. Code §632, 18 USC §1343 and 18 USC §1962, then the officers, members, managers and directors cannot hide behind the corporation or LLC.

52. On April 13, 2016, Defendants, or one of its employees, agents or contractors at its direction and control, called Plaintiff from telephone number spoofed 877-454-6885, on Plaintiff's personal cellular telephone at 619-719-9640 for which Plaintiff has expressly informed the public to not make solicitation calls via the

18cv

DNC Registry as well as other public warnings.  A personal cell phone is not required to be listed on the DNC Registry in order not to be called and to receive protection from spam telemarketers.

53. During the period relevant herein, Defendants were a provider of information technology and centralized operational and back-end support services to the Defendants and all of their subsidiaries.  As such, the Defendants, provided the infrastructure for dialing and recording the calls at issue in this litigation.  The Defendants use an ATDS and recording devices at the direction of the Defendants, and its relevant subsidiaries.  The Defendants also managed the call centers and telephone architecture and telephone recordings for the enterprise, and its subsidiaries, including Defendants.  The Defendants continue to manage call centers and recordings on behalf of the racketeering enterprise business.  Defendants are technologically sophisticated and Defendants employ this high level of knowledge and know-how to run its international criminal syndicate.

54. Moreover, the Defendants continues to monitor and record telephone calls to California residents, including Plaintiff.

55. During the relevant period herein, thousands of telephone calls with individuals in California were recorded by the Defendants' telephone systems at the direction of each of the other Defendants.

18cv

## SUBJECT MATTER JURISDICTION

56. Jurisdiction is proper in the Federal District Court because Plaintiff is resident of San Diego, California and federal questions permeate the Complaint.

57. Venue is proper in San Diego County because Plaintiff resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in San Diego County. Each of the Defendants has sufficient minimum contacts with San Diego County and the State of California, and otherwise purposely avail themselves of the markets in this state.

58. Plaintiff is informed and believes, and therefore alleges, that Defendants' comprehensive right to control is sufficient to meet the agency standard under California law.

59. During the relevant period described herein, Defendants each aided and abetted, encouraged and rendered substantial assistance to each other in furthering the CIPA and RICO violations. In addition to acting on their own behalf individually, Defendants, each of them, are and were acting as the agent, servant, employee, joint venturer, and representative of, and with the knowledge, consent and permission of, and in concert with the other Defendants. The actions of the Defendants as described in this Complaint all fall within the course, scope, and authority of the agency, service, and employment relationships that exist between the Defendants, and as such, create

joint ventures between all of the defendants to the extent that binding legal

relationships do not already exist. The actions and representations of

Defendants constitute a conspiracy on the part of Defendants for the purpose of

such actions and representations made to the Plaintiff of this cause of action.

The Defendants illegally and unlawfully engaged in the conduct of an enterprise

through a pattern of racketeering activity. Said conduct occurred over an

extended period of time so as to form a pattern. The enterprise consisted of

Defendants and each fictitiously named Defendant. The enterprise was

controlled, operated, directed and managed by Defendants and other persons

that are yet to be determined and remain unknown as of the time of filing this

Complaint. The racketeering activity consisted of the making of threats,

extortion, wire fraud, mail fraud, and violations of California criminal laws,

including illegal recording of Plaintiff's calls. Plaintiff is entitled to engage in

discovery to obtain admissible evidence to prove to the jury that Defendants

have knowingly and intentionally committed the torts alleged herein. Each of

the above stated acts by Defendants (who called Plaintiff multiple times) and

co-conspirator Defendants, constitute racketeering activity indictable pursuant

to 18 USC §1962, et seq. Defendants have also violated California's

racketeering statute (PC §186 et seq), which is hereby incorporated by this

reference as if fully set forth herein. This state law racketeering claim is a

pendent claim that may be heard by the Federal District Court alongside the

federal question causes of action.

60. Wire fraud under 18 USC §1343 occurred when Defendants, having devised or

intending to devise any scheme or artifice to defraud, or for obtaining moneys

or property by means of false or fraudulent pretenses, representations, or

promises, transmitted or caused to be transmitted by means of wire, radio, or

television communication in interstate or foreign commerce, any writings,

signs, signals, pictures, or sounds for the purpose of executing such scheme or

artifice.  In this case, Defendants called Plaintiff personally and caused Plaintiff

to be called and recorded in violation of California's criminal law.  Defendant's

call constituted a scheme and artifice to defraud Plaintiff and to obtain moneys

and property from Plaintiff as Defendants' attempted to get Plaintiff to send

them money.  The calls were transmitted by means of wires in interstate

commerce through the telephone and internet lines of the United States.

Defendant's calls also constituted threats and extortion using the wires of the

United States.  Defendants made two or more calls to Plaintiff to engage in wire

fraud, extortion and threats.  For purposes of the particularity requirement,

Defendants called on April 13, 2016.  Defendants are clearly the type of

racketeers that Congress intended to stop when it passed the RICO law some 40

years ago.

61. Defendant's personnel admitted that they use a Robotic Echo system as an autodialing system that responds to people with a robot voice message. This is clearly wire fraud by Defendants. Defendants are employing the use of the wires of the United States to engage in its illegal and criminal telemarketing activities.

## FACTUAL ALLEGATIONS REGARDING CONFIDENTIAL TELEPHONIC COMMUNICATIONS WITH PLAINTIFF

62. On April 13, 2016, Plaintiff was called by Defendants. Defendants engaged Plaintiff in confidential telephone communications. To the best of Plaintiff's recollection, he spoke to Defendants' personnel several times in addition to being called by the Robotic Echo system. On any of the occasions when he spoke telephonically with Defendants' personnel, Plaintiff was not advised at the outset of the calls that the calls might be recorded by Defendants. In light of the sensitive nature of the personal and confidential information being discussed during the telephone calls, Plaintiff had an objectively reasonable expectation of privacy in that he reasonably expected that the conversations were not being overheard, monitored and/or recorded. Defendants refused to provide Plaintiff with a written copy of its Do-Not-Call policy and refused to take Plaintiff's name and number off the telemarketing list.

## DEFENDANTS' IMPROPER AND ILLEGAL

## RECORDING POLICIES AND PRACTICES

63.  Defendants' policies and practices, during the period relevant herein and continuing to the present were to record confidential telephonic communications with California individuals without advising them at the outset of each telephone call that it is being recorded, in violation of Cal. Pen. Code §630, *et seq.*

64. The Defendants did not obtain consent to record any of the telephone conversations prior to the time they recorded the calls.

65. Defendants designed and implemented an extensive call center system for the thousands of consumer transactions serviced by its various affiliates and subsidiaries.  During the times relevant to the CIPA claims made herein, the system included three domestic and international call centers from which customer calls are placed and received on behalf of Defendants' business units.

66. Defendants operate, implement and manage the architecture and infrastructure necessary to meet the call recording strategies set by Defendants.  At the direction of the relevant business unit subsidiary of Defendants, Defendants' infrastructure dialed telephone numbers to California individuals and recorded the telephone calls.  The volume of calls was extraordinary and at each call center Defendants used databases and servers to store and retrieve thousands of illegal recordings.

18cv

67. Defendants continue to maintain call centers and oversee recordings in connection with Defendants' line of business. Plaintiff will seek, demand and argue for punitive damages at trial herein to send a message to Defendants and others similarly situated illegal telemarketers that violation of California's criminal, stalking, endangerment, and harassment laws are not allowed.

68. The central ATDS was, and currently continues to be, used by Defendants to initiate up to 2,000 calls a day. The ATDS is used by all the subsidiaries of Defendants. Approximately 10% or 1,000 of these calls were made to California consumers. Defendants' policy and practice was to set the ATDS to call the consumer's home, business, and cellular telephones up to five times a day. Depending on the instructions given by each business unit, 15%-20% of all of the telephone calls (at times up to 100% of the calls in certain businesses) were set to record by Defendants and recorded, using a centralized call recording hardware and software. Recording began when the customer was connected with a call center agent.

69. Defendants together strategically managed the ATDS to maximize resources; i.e., by employing a consistent process across the businesses for determining how and when calls would be made through the ATDS and scoring or rating the calls for advance treatment through the ATDS.

18cv

70. Defendants' businesses directly loaded customer information onto Defendants' "mainframe" or "back-end" computer system, which includes the ATDS. During the day, accounts would be loaded into dialer tables, and the tables would then be run through the dialer. Once the ATDS would initiate the call, and a customer would answer, Defendants' "automated call distributor" would then route the call to an available agent. Defendants called Plaintiff at 619-719-9640, his personal cell phone. Plaintiff was physically present in California during each and every illegally recorded telephone conversation alleged herein. At the same time the call was routed, the agent received the customer's information on a computer screen. If a recording of the telephone communications was going to be made by the recording system, the recording would begin when the Defendants' agent picked up the call. The agents do not have the ability to stop or start call recording.

71. With respect to whether the telephone agents themselves provide the call recipients with a verbal advisement that the call may be recorded, Defendants admit to a policy whereby the agents *do not provide any advisement* to customers that the calls are being recorded.

72. For calls related to the Defendants' business, Defendants are required, pursuant to Cal. Pen. Code §630 et seq., to give a verbal advisory that the call is being recorded before speaking to a customer. The Defendants have previously

admitted that based on an evaluation of a sample set of recordings, a verbal

advisory was not given.

73. CIPA prohibits the recording of communications without first obtaining the

consent of all parties to the conversation. Each and every defendant named

herein is accused of illegally recording the calls that they made to Plaintiff and

did not disclose the fact of recording to Plaintiff.  Cal. Pen. Code §632 and Pen.

Code §632.7 does not require that a communication be confidential in order to

be provided protection from interception or recording. The text of the section

notably contains no reference to "confidential communications;" moreover,

more than just confidential communications are protected. ALL

communications that are recorded without the consent of both parties to the

communication are protected as to Plaintiff.  Defendants, however, do not have

a reasonable expectation of privacy when they called Plaintiff.

74. The right protected by §632 *et seq*. is not against the betrayal of a party's

confidence by the other party. Rather, §632 *et seq*. protects against

simultaneous dissemination to an unannounced second auditor without the

party's consent.  Any communication, regardless of the intimacy of the facts

discussed, that is recorded devoid of notice of recordation, is a violation of

California law.

75. Under California law, the term "confidential communication" includes any communication carried on in circumstances that may reasonably indicate that any party to the communication desires it to be confined to the parties thereto. Cal. Pen. Code §632(c).   In other words, a communication is confidential "if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard."

76. In light of the sensitive nature of the personal financial and related information being discussed in the calls with Defendants, Plaintiff had an objectively reasonable expectation of privacy – in that Plaintiff reasonably expected that the conversations were not being overheard, monitored and/or recorded.

77. In violation of the CIPA, Defendants recorded Plaintiff's telephone calls without Plaintiff's express consent.

78. Defendants have engaged in a pattern and practice of recording a substantial percentage of the telephonic communications with individuals located in California.

79. Defendants intentionally, and without the consent of all parties, by means of an electronic recording device, recorded confidential telephonic communications with Plaintiff Ewin.

80. The Complaint here is timely filed.  The applicable statute of limitations for violations of the CIPA is one year (Cal. Civ. Proc. Code §340(a).

18cv

81. This Complaint is thus timely filed and Defendants have been on timely notice.

## CAUSES OF ACTION

### (For Statutory Damages and Injunctive Relief for Violations of Cal. Penal Code §632, §632.7 and §637.2(a)-(b))

82.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

83.  At all times relevant herein, Defendants routinely communicated by telephone with Plaintiff in connection with attempts to sell products of Defendants.

84. At all times relevant herein, Defendants made use of a software system that enabled them to secretly record confidential telephone conversations between Plaintiff on the one hand, and Defendants on the other hand.

85. In each of his conversations with Defendants, Plaintiff discussed his confidential personal financial circumstances and affairs on each account.  It was reasonable for the Plaintiff to expect that the conversations would be confined to the parties to the conversation and that his conversations were not being overheard or recorded.

86. Each of the conversations between Defendants and Plaintiff was a "confidential communication" within the meaning of Cal. Pen. Code §632(c).

87. Cal. Pen. Code §632 *et seq.* prohibits a party from recording such conversations without first informing all parties to the conversation that the conversation is

being recorded.  Defendants' confidential telephone communications with Plaintiff were secretly and surreptitiously recorded by Defendants without obtaining consent to record such conversations.

88. Defendants' practice of recording telephone conversations with Plaintiff violated Cal. Pen. Code §632(a) and §632.7.

89. Pursuant to Cal. Pen, Code §637.2(a)(1), Plaintiff is entitled to recover statutory damages in the amount of $5,000 per violation.  Plaintiff's counsel is also entitled to attorneys' fees and costs pursuant to Cal. Civ. Proc. Code §1021.5. Plaintiff consulted with several California licensed attorneys and paid for said legal advice to enable him to bring this suit.

90. Pursuant to Cal. Pen. Code §637.2(b), Plaintiff also seeks a preliminary and permanent injunction to restrain Defendants from committing further violations of CIPA and to prohibit and prevent Defendants from making future threats to Plaintiff.

91. Pursuant to Cal. Pen. Code §637, Defendants have willfully disclosed the contents of Plaintiff's telephonic communications to a third party without Plaintiff's consent.

## RICO CONSPIRACY 18 U.S.C. §1964(c)

92. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

93. Defendants, and each of them, have engaged in the predicate acts of wire fraud and money laundering which supports the claim of violation of 18 U.S.C. §1962(d) and (c), conspiracy to conduct racketeering affairs through a pattern of racketeering activity.  Additionally, Defendants have made express and intentional threats directly at Plaintiff that were within the course and scope of the racketeering enterprise's operations.  The enterprise is the combination of the entities named herein as Defendants.  Specifically, the Defendants is the enterprise.  The period of the conspiracy has lasted from at least April, 2016 forward to present day.  Upon information and belief, the conspiracy began in 2016 when Defendants initiated the idea of illegal telemarketing.  There are two or more acts that form the basis of racketeering engaged in by Defendants by using the wires of the United States to illegally record Plaintiff's telephonic conversations and laundering over $10,000 of the proceeds of the wire fraud through financial institutions.  Defendants engaged in the fraudulent use of the wires to threaten and extort Plaintiff into handing over money or property to Defendants.  Defendants are also engaging in voluminous illegal international spam calling in direct violation of 47 U.S.C. §227 to solicit confidential information over the wires of the United States.  Defendants are associated with and a member of the enterprise as alleged and described above by Plaintiff. Defendants knowingly committed at least two of the predicate acts herein

described.  The predicate acts formed a pattern of racketeering activity by having the same or similar purposes, results, participants, victims, or methods of commission, or were otherwise interrelated by distinguishing characteristics so that they were not isolated events.  The predicate acts amounted to, or threatened the likelihood of, continued criminal activity posing a threat of continuity projecting into the future and through the commission of the two or more connected predicate acts, the Defendants conducted or participated in the conduct of the affairs of the enterprise.  The enterprise was engaged in, or its activities affected, interstate commerce.  The use of the wires and the laundering of money through financial institutions affects interstate commerce.

94. Plaintiff has been injured in his business and property as a direct and proximate cause of Defendants willful violations of California law as described above, which is the pattern of racketeering activity.  Plaintiff business has suffered a significant economic downturn as a direct and proximate cause of Defendant's racketeering activities as described herein.  Plaintiff has lost money and revenues that could have been earned but for Defendants racketeering activity.  Defendants did not act by mistake or accident, but rather acted voluntarily and knowingly all while conspiring to defraud Plaintiff of his privacy, money, business and property.  Each and every fraudulent telephone conversation that

forms the basis of this cause of action constituted an illegal use of the wires in violation of 18 U.S.C §1343.

95. Plaintiff demands threefold damages as well as statutorily imposed attorneys' fees as a result of Defendants' racketeering activities described above. Plaintiff has had to consult with a licensed attorney at law to prosecute this action and those attorney fees are requested to be paid or reimbursed.

96. Defendants' actions did not result in nor were caused by the purchase of or sale of securities.

97. Defendants' use of the wires (18 U.S.C. 1343) within the United States went across state lines and thus constitutes the interstate commerce of the racketeering enterprise of Defendants.

98. Defendants committed two or more acts of racketeering activity within the ten years prior to filing this cause of action.

99. In addition, Defendants' pattern of racketeering activities is the constant and multiple recording of thousands of telephone calls illegally over an extended period of time as described above as well as a knowing and intentional violation of the DNC Registry. Moreover, Defendant's extortionate threats constitute the pattern of racketeering activities.

100.   Each Defendant named herein engaged, directly or indirectly, in the pattern of racketeering affairs and activities described above. Defendant's overt and

express threats to Plaintiff over the telephone also constitute predicate acts for purposes of racketeering activity.

101.   Defendants laundered their profits, revenues, expenses and income from their racketeering activities as defined by 18 U.S.C. 1961(1), through United States financial institutions in violation of 18 U.S.C. §§1956 and 1957. Defendants have earned, illegally, over $10,000 in this racketeering enterprise operation and Defendants have laundered those said funds through financial institutions in the United States.

102.   The Defendants specified unlawful activity for purposes of 18 U.S.C. §1956(c)(7), is 18 U.S.C. §1343 as defined in 18 U.S.C. §1961(1).

## VIOLATION OF 47 U.S.C. §227 DO NOT CALL REGISTRY

103.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

104.   47 C.F.R. 64.1200(c)(2) prohibits calling any number on the DNC Registry. 47 C.F.R. 64.1200(a)(1)(iii) states that no person or entity may initiate any commercial purpose telephone call to any cellular telephone that is already on the DNC Registry.  Plaintiff and Defendants do not and did not ever have any pre-existing or established business relationship at any time.  Defendants are not a tax-exempt nonprofit organization or a political organization.

18cv

105.   Defendants do not have a Do-Not-Call database.  Defendants refused to identify themselves upon request by Plaintiff.   Defendants refused to put Plaintiff on their Do-Not-Call list.  Defendants used and employed an automated dialer to call Plaintiff.

106.   Defendants do not have a Do-Not-Call policy that is written.

107.   Defendants refused to provide Plaintiff with a written copy of any Do- Not-Call policy.

108.   Defendants do not scrub their call lists against the DNC Registry.

109.   Defendants do not have any personal relationship with Plaintiff.

110.   Defendants refused to provide the full name of the caller on the telephone who initiated the call.

111.   Defendants refused to provide a telephone number or address at which the Defendants could be contacted.

112.   Defendants knowingly and willfully violated the automated-call requirements under 47 U.S.C. §227(b)(3) and willfully and knowingly violated the DNC Registry requirements under 47 U.S.C. §227(c )(5).  *Charvat v. NMP, LLC* (2001, CA6 Ohio) 656 F.3d 440 holds that Plaintiff may recover both $1500 statutory damages awards even if both violations occurred in the same telephone call.

18cv

113.   Defendants engaged in unsolicited advertising through the use of wires in the United States.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendants as follows:

A.   For statutory damages in the amount of $5,000 per violation pursuant to Cal. Pen. Code §637.2(a)(1) or, if greater, three times actual damages as provided in Cal. Pen. Code §637.2(a)(2); $500 plus threefold damages for intentional or willful violation of the DNC Registry for each and every call;

B.   For punitive damages in an amount to be determined with exactness at trial herein;

C.   For threefold damages pursuant to 18 U.S.C. §1964(c);

D.   For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to Cal. Pen. Code §637.2(b);

E.   For the payment of reasonable attorneys' fees and costs of suit incurred herein under all applicable statutes and rules including under Cal. Civ. Proc. Code §1021.5 and 18 U.S.C. §1964;

F.   For pre- and post-judgment interest at the legal rate;

G.   For an injunction prohibiting Defendants from calling Plaintiffs ever again;

18cv

H.     For an injunction prohibiting Defendants from ever contacting Plaintiffs ever again in any manner whatsoever, including spam texting;

I.     $1,500 for each violation of 16 CFR §610.4(b)(iii)(B) initiating a call to a DNC registered number;

J.     $1,500 for each violation of 47 CFR §64.1601(3) caller ID spoofing;

K.     $1,500 for each violation of 47 CFR §64.1200(d)(1) failure to provide copy of written do not call policy;

L.     $1,500 for each violation of 47 CFR §64.1200(b)(1) failure to state name of business at beginning of call;

M.     $1,500 for each violation of 47 USC §227(b)(1)(A)(iii) willful or knowing call to cellular phone; and

N.     For any other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and demands a trial by jury for all claims so triable. This is a verified Complaint and all statements and declarations herein are true and correct to the best of my knowledge, information and belief.

Dated:  May 29, 2018

/s/ *Anton Ewing*
Anton Ewing,
Plaintiff in pro per
Anton@antonewing.com

18cv

## DECLARATION IN SUPPORT OF COMPLAINT

I, ANTON EWING, hereby depose, declare and state the following as true and correct under penalty of perjury under the laws of the State of California:

1.   I was called multiple times by Defendants herein and said calls were recorded without my knowledge or consent on March 21, 2016 and at other times.

2.   My cellular telephone was registered with the DNC Registry more than 31 days prior to any and all calls made to said cell phone.

3.   I heard a distinctive click at the beginning of each telemarketing call made to my phone by Defendants.

4.   There was a more than two-second delay before a live human operator came on to the calls that were made to my phone for telemarketing purposes by Defendants.

I am competent to testify to the above stated factual assertions.

Dated: May 29, 2018

/s/ *Anton Ewing*
Anton Ewing

COMPLAINT- 59

18cv